IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CHRIMAR SYSTEMS, INC., and CHRIMAR HOLDINGS COMPANY, LLC<br><br>  *Plaintiffs,*<br><br>V.<br><br>JUNIPER NETWORKS, INC.<br><br>  *Defendant.* | CIVIL ACTION NO. 6:15CV618<br>CONSOLIDATED WITH<br>**CIVIL ACTION NO. 6:15-CV-630 JRG-JDL**<br><br>**JURY TRIAL DEMANDED** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Juniper Networks, Inc.'s ("Juniper") Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a). (Doc. No. 19.) Plaintiffs Chrimar Systems, Inc. and Chrimar Holding Company, LLC ("Chrimar") filed a response (Doc. No. 20) to which Juniper filed a reply (Doc. No. 22), and Chrimar filed a sur-reply (Doc. No. 23). Upon consideration of the parties' arguments, the Court **GRANTS** Juniper's Motion to Transfer Venue (Doc. No. 19).

## BACKGROUND

Chrimar Systems Inc. is a Michigan corporation, with a principal place of business located at 36528 Grand River Avenue, Suite A-1, Farmington Hills, Michigan 48335. (Doc. No. 12, at ¶ 1.) Chrimar Holding Company, LLC is a Texas limited liability company with a place of business located at 911 NW Loop 281, Suite 211-30, Longview, Texas 75604. *Id.* at ¶ 2. Chrimar Systems, Inc. is the owner of the patents-in-suit and licensed those patents to Chrimar Holding Company, LLC. (Doc. No. 20-1, Declaration of John F. Austermann, III, at ¶ 6)

("Austermann Decl.").) Chrimar Holding Company, LLC maintains a single office in Longview, Texas, where it employs one full-time employee, Amanda Barnes. *Id.* at ¶ 7. Ms. Barnes's duties include supporting Chrimar's licensing efforts by conducting product research, product testing, and marketing support. *Id.*

Juniper is a Delaware Corporation with a principal place of business in Sunnyvale, California. (Doc. No. 19-2, Declaration of Scott J. Coonan, at ¶ 2) ("Coonan Decl.").) Juniper has approximately 3500 employees in its Sunnyvale headquarters, approximately 1800 of which are in Juniper's engineering organization. *Id.* at ¶¶ 3, 4. Juniper specifically identifies five employees who have knowledge regarding the accused products and work at Juniper's Sunnyvale headquarters. *Id.* at ¶¶ 7, 9, 10, 12. Juniper's documents related to the accused products, such as documents related to engineering and R&D for the accused products, financial documents, marketing documents, and source code are located in the Northern District of California. *Id.* at ¶¶ 8, 11, 13, 14. Samples of Juniper's products are also maintained in its headquarters in Sunnyvale, California. *Id.* at ¶ 15. Juniper has sales offices around the country, including Texas, and a few employees in Texas who work from home. *Id.* at ¶¶ 17, 18.

**LEGAL STANDARD**

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C.

§ 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In this case, Chrimar

does not contest that Juniper conducts business within the Northern District of California and transfer is permissible under § 1404.

## I. The Private Interest Factors

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech,* 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, Juniper must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *In re Apple,* 743 F.3d at 1379; *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, Juniper maintains that employees with relevant knowledge regarding the accused products are located in the Northern District of California. (Coonan Decl. at ¶¶ 6–13.) Juniper specifically identifies the following five employees with relevant information located in Sunnyvale, California:

- Rahul Vir, Product Line Manager for the accused EX series switch;
- Jeffrey Pochop, engineer for the accused WLA321 Access Point;
- Marty Garvin, Senior VP of Worldwide Operations;

- Robyn Denholm, Chief Financial and Operations Officer;

- Scott Miles, Senior Marketing Manager for the accused EX series switch.

*Id.* at ¶¶ 7-12.

As to its documents, Juniper contends that technical and financial documents relevant to the accused products, including source code are stored in the Northern District of California. *Id.* at ¶¶ 8, 11, 13, 14. Juniper also maintains that its product samples are available at its Sunnyvale headquarters. *Id.* at ¶ 13.

Chrimar identifies one employee in its Longview, Texas office—Amanda Barnes—who is responsible for supporting Chrimar's licensing efforts, conducting product research, testing products, and marketing. (Austermann Decl. at ¶ 7.) In its briefing, Chrimar contends it has relevant documents in its Longview office, including patent prosecution documents, documents related to Chrimar's licensing activities, documents related to its EtherLock® products, and documents related to testing. (Doc. No. 23, at 2.) Chrimar also states that its EtherLock® products, which implement the patented technology, are physically located in the Eastern District of Texas. (Doc. No. 20, at 7.) Chrimar maintains it intends to present and demonstrate these products at trial and will make them available for inspection in this District. *Id.*

Chrimar also maintains that several third parties have relevant information and are located in or near this District. Chrimar maintains that the PoE compliant equipment used to run the Juniper Networks Junos operating system is manufactured by Dell, Inc., who is located in Round Rock, Texas. (Doc. No. 20, at 7.) Chrimar also maintains that Silicon Laboratories Inc. and Cisco have evidence regarding the state of the art in the relevant field of PoE technology, and both are located in Texas. *Id.* at 7–8.

Here, Juniper has specifically identified the location of its sources of proof in the Northern District of California, including specific employees with relevant knowledge and specific documents related to the accused products. Chrimar has identified only one employee with relevant knowledge and one product located in this District, along with several relevant documents located in this District. Chrimar identifies three third parties, including two third parties who it contends will have documents relevant to the relevant state of the art, and one who manufactures the operating system on which the accused products run. While the Court acknowledges that these entities will likely have at least some information relevant to Chrimar's infringement claims, the Court must also acknowledge that "the bulk of relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Chrimar faults Juniper for not identifying the total volume of documents it has in the Northern District, but neither party has identified for the Court the total volume of relevant documents. Again, the Court must acknowledge in this instance that the bulk of documents will come from the accused infringer; particularly, where, as here, the accused infringer has identified specific documents located at its headquarters. The Court does not discount Chrimar's relevant documents in this District. However, on balance, considering the number of witnesses identified in each district, as well as the specific categories of documents identified, the Court finds this factor weighs in favor of transfer.

*(b)The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at

316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Juniper does not identify any individual third-party witnesses located in the Northern District of California. Instead, Juniper identifies Broadcom Corp. and Microsemi Corp. who supply PoE controllers to Juniper for the accused products and who are both located in Southern California. Coonan Decl. at ¶ 16. These identifications do not weigh heavily in the analysis. First, Juniper has not identified any individuals or specific documents and where they would be located. Second, because both of these companies are not located within the Northern District of California, and likely more than 100 miles away, the Court cannot perform an adequate analysis under Fed. R. Civ. P. 45(c).[1]

Chrimar specifically identifies two third-party witnesses who are claimed to have relevant knowledge. (Doc. No. 20, at 12–13.) Chrimar first identifies Martin Patoka of Texas Instruments ("TI") who Chrimar maintains has knowledge regarding the IEEE 802.3at Task Force's knowledge of Chrimar's patents and the decision to adopt the standard without considering these rights. *Id.* at 12. Chrimar contends that Mr. Patoka is still employed by TI, which is located within 100 miles of this Court, and therefore that he is subject to the full subpoena power of this Court. *Id.* Chrimar also identifies Marc Sousa, a former Firmware Design Manager at TI who has knowledge of the design of PoE controllers. *Id.* at 13. Chrimar

---

[1] For example, any witnesses further than 100 miles away which would require a showing that they "would not incur substantial expense" in order to be compelled to trial. Fed. R. Civ. P. 45(c)(1)(B)(ii).

contends Mr. Sousa is subject to the full subpoena power of this Court as he is located in McKinney, Texas. *Id.*

Weighing the two third-party corporations located in California, against the two specifically identified third-party witnesses located in Texas, the Court finds this factor weighs slightly against transfer.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

As discussed, Juniper has specifically identified five employees as willing witnesses with relevant knowledge of the accused products who are located in the Northern District of California. (Coonan Decl. at ¶¶ 6–13.)

Chrimar identifies Ms. Barnes who is a full-time employee located in Longview, Texas who will testify about the marketing of Chrimar's patented EtherLock® products. (Doc. No. 20, at 10.) Chrimar also identifies the inventors of the patents-in-suit, John Austermann and Marshall Cummings, who are located in the Detroit area and therefore are closer to this District than the Northern District of California. *Id.* Chrimar maintains a trial in this District would be more convenient and less expensive for these witnesses. As discussed above, Chrimar has also

8

specifically identified two third-party witnesses who are located in or near this District. (Doc. No. 20, at 12–13.)

In sum, Juniper has identified five willing witnesses in the Northern District of California, and Chrimar has named one willing witnesses in this District and two third-party witness in or near this District. The convenience of the named inventors, being located in Michigan, is neutral. Thus, on balance, the Court finds this factor weighs in favor of transfer.

*(d) Other Practical Problems*

*(i) Judicial Economy*

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. Chrimar contends that judicial efficiency weighs against transfer because of this Court's familiarity with the patents-in-suit. (Doc. No. 20, at 5.) There are five cases filed in this District in 2013 that allege infringement of one of the patents-in-suit, U.S. Patent No. 8,155,012 ("the '012 Patent"): 6:13-cv-879, -880, -881, -882, -883 (hereinafter "*Chrimar I*" cases). There are also two cases filed in this District in 2015 that involve all four of the patents-in-suit: 6:15-cv-163, -164 (hereinafter "*Chrimar II*" cases). As discussed, the *Chrimar I* cases all involved one of the asserted patents in the instant action. The undersigned presided over all five of those cases and issued a claim construction opinion construing disputed terms of the '012 Patent. All five cases settled prior to the filing of the instant action. One of the *Chrimar II* cases, 6:15-cv-163, involves all four of the asserted patents-in-suit, and the other, 6:15-cv-164, involves two of the patents-in-suit. Both of these cases are assigned to the undersigned. At the time the instant action was filed, the *Chrimar II* cases had been consolidated and were ready for

9

a scheduling conference. In addition, on the same day the instant action was filed, twenty-five additional cases were filed in this District alleging infringement of the same patents, and five recently-filed additional cases involving two of the asserted patents were also pending in this District.

Juniper maintains that the Northern District of California will have some experience from handling one currently pending case, 4:13-cv-1300, involving a related patent, U.S. Patent No. 7,457,250 ("the '250 Patent"). (Doc. No. 19, at 7.) Prior to the initiation of this action, Judge White issued a claim construction opinion construing the disputed terms of the '250 Patent. (4:13-cv-1300, Doc. No. 254.)

For purposes of judicial economy, the Court recognizes those benefits that were apparent at the time the instant action was filed. *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed"). Here, at the time the instant action was filed, the undersigned had previously construed the disputed terms of one of the patents-in-suit in a terminated case, had one case pending with all four asserted patents, six additional cases with two of the asserted patents, and twenty-five co-filed cases with all four of the patents-in-suit asserted. The Northern District of California had one case pending involving a related patent for which it had construed the disputed claim terms.

Given that this Court is the only court with substantive experience with some of the patents-in-suit, and currently has twenty-five pending cases involving all four asserted patents, and six cases involving two asserted patents—all assigned to the same judge—there were at least some apparent judicial economy benefits at the time of the filing that favor this action remaining

in this District. While it appears the Northern District of California also had some familiarity with a related patent, this Court's substantive familiarity with the patents-in-suit weighs slightly against transfer.

## II. The Public Interest Factors

The parties agree that the public interest factors are neutral, aside from the administrative difficulties flowing from court congestion, the familiarity of the forum with the law, and local interest considerations.

*(a) The Administrative Difficulties Flowing From Court Congestion*

This factor is the most speculative, and cannot alone outweigh other factors. *Genentech*, 566 F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* Juniper cites varying general civil litigation statistics and contends this factor is neutral. (Doc. No. 19, at 14.) Chrimar cites the specific cases pending in both districts as exemplary of the time to trial. (Doc. No. 20, at 14.) Chrimar contends that the case pending in the Northern District of California involving one related patent has a trial date set for August 22, 2016, forty-one months after it was initiated in the Northern District of California. *Id.* Chrimar compares that schedule to the schedule of the *Chrimar II* cases (involving all four and two of the patents-in-suit, respectively), which are set for trial in October 2016, less than nineteen months from when those cases were initiated in this District. *Id.* While generally the Court finds this factor to be speculative in nature, in this instance, the co-pendency of related patent infringement actions is instructive. Where this Court has set trial on its related patent cases in a time frame that moves the case to trial twice as fast as the related case in the Northern District of California

11

(nineteen months compared to forty-one months), the Court finds this factor weighs slightly against transfer.

*(b) The Local Interest in Having Localized Interests Decided at Home*

Juniper contends that the Northern District of California has a local interest in this case because the research and development of the accused products in the United States took place there. (Doc. No. 19, at 15.) Chrimar maintains that this District has a local interest in these actions because Chrimar Holdings Company LLC is a Texas company that has been based in Longview, Texas for several years and maintains one full-time employee. (Doc. No. 20, at 15.) Because Juniper has identified several individuals whose work relates to the accused technology and who are located in the Northern District of California, the Court finds that the Northern District of California has a local interest in the outcome of the litigation. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012). This District also has at least some local interest as Chrimar has an office in this District and employs at least one permanent employee in this District. On balance, this factor weighs in favor of transfer because Juniper has specifically identified individuals whose work and reputation are being called into question by allegations of infringement. Such a designation weighs more heavily than Chrimar's identification of one individual largely involved in licensing and marketing activities.

*(c) The Familiarity of the Forum with the Law*

Chrimar argues that this factor is weighs against transfer because this Court already construed claim terms of the one of the patents-in-suit. (Doc. No. 20, at 15.) However, Chrimar's argument puts this Court in no better position to have an understanding of the applicable laws of claim construction than the Northern District of California. Chrimar's argument on this point, rather, is really directed towards principles of judicial efficiency, which were discussed above. Accordingly, the Court finds this factor neutral as both courts are familiar with patent law.

*(d) The Remaining Public Interest Factors*

The remaining public interest factors are neutral.

## CONCLUSION

Upon balancing the venue factors, the Court finds that the Northern District of California is a clearly more convenient forum. Here, the location of sources of proof, the convenience of willing witnesses, and the local interest weigh in favor of transfer. These three important factors, considered together, ultimately weigh heavily in favor of transfer in this case. Considerations of judicial economy, the availability of the compulsory process, and the administrative difficulties arising from court congestion weighed slightly against transfer. All other factors are neutral. The Court acknowledges that the strongest factor against transfer on the facts before it is judicial economy. In this situation, where Juniper has made a strong showing in favor of transfer on factors such as the location of sources of proof and the convenience of witnesses, the benefits of judicial economy do not outweigh Juniper's showing that the Northern District of California is clearly more convenient. Simply put, where Juniper has shown the Northern District of California is a clearly more convenient forum, the considerations of judicial economy involving

this Court's prior experience with an overlapping patent and co-pending cases do not override that showing to warrant a denial of transfer. *See In re Verizon*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("[t]o interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)"); *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) ("[t]he proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation"); *In re Apple*, 581 F. App'x 886, 889 ("judicial economy is just one relevant consideration in determining how administration of the court system would best be served in deciding a transfer motion.") Accordingly, the Court **GRANTS** Juniper's motion to transfer (Doc. No. 19).

**So ORDERED and SIGNED this 11th day of January, 2016.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE