IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CHRIMAR SYSTEMS, INC., and CHRIMAR HOLDINGS COMPANY, LLC<br><br>*Plaintiffs,*<br><br>V.<br><br>NETGEAR, INC.<br><br>*Defendant.* | § § § § § § § § § § § § § § | CIVIL ACTION 6:15CV618<br>CONSOLIDATED WITH<br>**CIVIL ACTION NO. 6:15-CV-634 JRG-JDL**<br><br>**JURY TRIAL DEMANDED** |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Netgear Inc.'s ("Netgear") Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a). (Doc. No. 22.) Plaintiffs Chrimar Systems, Inc. and Chrimar Holding Company, LLC ("Chrimar") filed a response (Doc. No. 27) to which Netgear filed a reply (Doc. No. 30). After considering the parties' arguments, the Court **GRANTS** Netgear's Motion to Transfer Venue (Doc. No. 22).

### BACKGROUND

Chrimar Systems Inc. is a Michigan corporation, with a principal place of business located at 36528 Grand River Avenue, Suite A-1, Farmington Hills, Michigan 48335. (Doc. No. 13, at ¶ 1.) Chrimar Holding Company, LLC is a Texas limited liability company with a place of business located at 911 NW Loop 281, Suite 211-30, Longview, Texas 75604. *Id.* at ¶ 2. Chrimar Systems, Inc. is the owner of the patents-in-suit and licensed those patents to Chrimar

1

Holding Company, LLC. (Doc. No. 27-1, Declaration of John F. Austermann, III, at ¶¶ 5, 6) ("Austermann Decl.").) Chrimar Holding Company, LLC maintains a single office in Longview, Texas, where it employs one full-time employee, Amanda Barnes. *Id.* at ¶ 7. Ms. Barnes's duties include supporting Chrimar's licensing efforts by conducting product research, product testing, and marketing support. *Id.* Chrimar's documents related to the patents-in-suit and electronic documents relating to its Etherlock® products are located either at Chrimar's Longview office or on servers in Dallas, Texas. *Id.* at ¶ 8.

Netgear is a Delaware Corporation with a principal place of business at 350 East Plumeria Drive, San Jose, California, 95134-1911. (Doc. No. 22-1, Declaration of Peter Newton, at ¶ 4) ("Newton Decl.").) Netgear has approximately 287 employees in its San Jose headquarters, which accounts for 70% of its U.S.-based employees. *Id.* at ¶ 5. Netgear specifically identifies five employees who have knowledge regarding the accused products and work at Netgear's San Jose headquarters. *Id.* at ¶ 7. Netgear identifies that its documents are stored electronically in San Jose, as well as on servers in Mesa, Arizona, and through third-party cloud-based systems located at Netgear's San Jose headquarters. *Id.* at ¶ 8. Netgear specifically identifies four employees who are located in San Jose who would have relevant information regarding the location of the documents and the ability to retrieve and recover such documents from the server if necessary. *Id.* at ¶ 9. Netgear's hard copy documents related to the accused products, such as technical, packaging and marketing documents are located in the Northern District of California. *Id.* at ¶ 10. Netgear has three Texas-based employees, two salespersons and one product line specialist who works on products not accused in this action. *Id.* at ¶ 12.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In this case, Chrimar does not contest that Netgear conducts business within the Northern District of California and transfer is permissible under § 1404.

**I.    The Private Interest Factors**

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech,* 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, Netgear must identify its sources of proof with some specificity such that the Court may determine

4

whether transfer will increase the convenience of the parties. *In re Apple,* 743 F.3d at 1379; *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, Netgear maintains that employees with relevant knowledge regarding the accused products are located in the Northern District of California. (Newton Decl. at ¶¶ 7-9.) Netgear specifically identifies the following five employees with relevant information located in San Jose, California:

- Peter Newton, Senior Director Product Line Manager, Commercial Business Unit in the Marketing department, knowledge regarding how NETGEAR markets the accused products and the development and design of the accused products;

- Bradley Verona, Senior Product Line Manager, Volume Switches, Commercial Business Unit, Product Marketing in the Marketing department, knowledge regarding the lifecycles of the accused products;

- Karine Tripier, Senior Program Manager, R&D – Business Products & Solutions, knowledge regarding the development process for NETGEAR's business products, including the accused products;

- Phoebe Tsai, Director, Strategic Purchasing in the Operations department, knowledge regarding the purchasing of Power over Ethernet chips and other components for the accused products, and knowledge of which Power over Ethernet chip vendors and original design manufacturers were used by NETGEAR in the development and manufacturing of the accused products; and

- Gordon Mattingly, VP of Financial Planning and Analysis in the Finance and Sales department, knowledge regarding the sales and financing of the accused products.

*Id.* at ¶ 7.

As to its documents, Netgear contends that the hard copy documents related to the accused products and its electronic data and documents are stored in the Northern District of California. *Id.* at ¶ 10. Netgear also maintains that employees of third-parties store relevant documents on cloud-based systems in San Jose, California, and that some electronic documents are on servers located in Mesa, Arizona. *Id.* at ¶ 8.

Chrimar identifies one employee in its Longview, Texas office—Amanda Barnes—who is responsible for supporting Chrimar's licensing efforts, conducting product research, testing products, and marketing. (Austermann Decl. at ¶ 7.) Chrimar contends that hardcopy documents relating to the asserted patents and electronic documents relating to its Etherlock® products, which implement the patented technology, including marketing material for those products, are located in its Longview office and on servers in Dallas, Texas. *Id.* at ¶ 8. Chrimar also states that its EtherLock® products, which implement the patented technology, are physically located in the Eastern District of Texas. (Doc. No. 27, at 9.) Chrimar maintains it intends to present and demonstrate these products at trial and will make them available for inspection in this District. *Id.* Chrimar also maintains generally that Texas Instruments ("TI") will have substantial amounts of relevant documents. *Id.*

Here, Netgear has specifically identified the location of its sources of proof in the Northern District of California, including specific employees with relevant knowledge and specific documents related to the accused products. Chrimar has identified only one employee with relevant knowledge and one product located in this District, along with several relevant documents located in this District. Chrimar also generally identifies TI as having relevant

6

documents, but does not specify the relevance of those documents to this litigation. In weighing this factor, the Court must acknowledge that "the bulk of relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Chrimar calls into question Netgear's servers located in Arizona, and also claims email servers are based elsewhere. (Doc. No. 27, at 7.) Chrimar also faults Netgear for not identifying the total volume of documents it has in the Northern District of California, but neither party has identified for the Court the total volume of relevant documents. Again, the Court must acknowledge in this instance that the bulk of documents will come from the accused infringer; particularly, where, as here, the accused infringer has identified specific documents located at its headquarters. The Court does not discount Chrimar's relevant documents in this District. However, on balance, considering the number of witnesses identified in each district, as well as the specific categories of documents identified, the Court finds this factor weighs in favor of transfer.

*(b)The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West*

*Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Netgear identifies one third-party, Geoffrey Thompson, who was the IEEE 802.3 Working Group Chairperson and who is located in the Northern District of California. (Doc. No. 22, at 12-13.) Chrimar contends that Mr. Thompson has served as an expert witness by defendants in other cases filed by Chrimar and that his weight should be discounted because Netgear could retain him as an expert. (Doc. No. 27, at 11.) However, given that Netgear has identified Mr. Thompson as a third-party potential witness and does not indicate any intention to retain him as an expert, the Court accepts that Netgear has identified a third-party potential witness located in the Northern District of California.

Chrimar specifically identifies two third-party witnesses who are claimed to have relevant knowledge. (Doc. No. 27, at 12–13.) Chrimar first identifies Martin Patoka of Texas Instruments ("TI") who Chrimar maintains has knowledge regarding the IEEE 802.3at Task Force's knowledge of Chrimar's patents and the decision to adopt the standard without considering these rights. *Id.* at 12. Chrimar contends that Mr. Patoka is still employed by TI, which is located within 100 miles of this Court, and therefore that he is subject to the full subpoena power of this Court. *Id.* Chrimar also identifies Marc Sousa, a former Firmware Design Manager at TI who has knowledge of the design of PoE controllers. *Id.* at 13. Chrimar contends Mr. Sousa is subject to the full subpoena power of this Court as he is located in McKinney, Texas. *Id.* Chrimar maintains that these witnesses are of particular importance

because Netgear alleges the actions of the IEEE are relevant and at least some of Netgear's accused products use TI PoE controllers such as the TI TPS2375. *Id.* at 12–13.

Weighing the one third-party witness specifically identified in the Northern District of California, against the two specifically identified third-party witnesses in Texas, the Court finds this factor is neutral.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

As discussed, Netgear has specifically identified five employees as willing witnesses with relevant knowledge of the accused products who are located in the Northern District of California. (Newton Decl. at ¶ 7.) Netgear has also identified Mr. Thompson who is located in the Northern District of California. (Doc. No. 22, at 12–13.) Netgear maintains that having trial in this District would significantly increase the inconvenience and expense for these witnesses.

Chrimar identifies Ms. Barnes who is a full-time employee located in Longview, Texas who will testify about the marketing of Chrimar's patented EtherLock® products. (Doc. No. 27, at 10.) Chrimar also identifies the inventors of the patents-in-suit, John Austermann and

9

Marshall Cummings, who are located in the Detroit area and therefore are closer to this District than the Northern District of California. *Id.* at 11. Chrimar maintains a trial in this District would be more convenient and less expensive for these witnesses. As discussed above, Chrimar has also specifically identified two third-party witnesses who are located in or near this District. (Doc. No. 27, at 12–13.)

In sum, Netgear has identified five willing witnesses in the Northern District of California, and Chrimar has named one willing witnesses in this District. In addition, there are two third-party witnesses identified for whom this District would be more convenient, and one for whom the Northern District of California would be more convenient. The convenience of the named inventors, being located in Michigan, is neutral. Thus, on balance, the Court finds this factor weighs in favor of transfer.

*(d) Other Practical Problems*

*(i) Judicial Economy*

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. Chrimar contends that judicial efficiency weighs against transfer because of this Court's familiarity with the patents-in-suit. (Doc. No. 27, at 5.) There are five cases filed in this District in 2013 that allege infringement of one of the patents-in-suit, U.S. Patent No. 8,155,012 ("the '012 Patent"): 6:13-cv-879, -880, -881, -882, -883 (hereinafter "*Chrimar I*" cases). There are also two cases filed in this District in 2015 that involve all four of the patents-in-suit: 6:15-cv-163, -164 (hereinafter "*Chrimar II*" cases). As discussed, the *Chrimar I* cases all

involved one of the asserted patents in the instant action. The undersigned presided over all five of those cases and issued a claim construction opinion construing disputed terms of the '012 Patent. All five cases settled prior to the filing of the instant action. One of the *Chrimar II* cases, 6:15-cv-163, involves all four of the asserted patents-in-suit, and the other, 6:15-cv-164, involves two of the patents-in-suit. Both of these cases are assigned to the undersigned. At the time the instant action was filed, the *Chrimar II* cases had been consolidated and were ready for a scheduling conference. In addition, on the same day the instant action was filed, twenty-five additional cases were filed in this District alleging infringement of the same patents, and five recently-filed additional cases involving two of the asserted patents were also pending in this District.

Netgear maintains that the Northern District of California will have some experience from handling one currently pending case, 4:13-cv-1300, involving a related patent, U.S. Patent No. 7,457,250 ("the '250 Patent"). (Doc. No. 22, at 13–14.) Prior to the initiation of this action, Judge White issued a claim construction opinion construing the disputed terms of the '250 Patent. (4:13-cv-1300, Doc. No. 254.)

For purposes of judicial economy, the Court recognizes those benefits that were apparent at the time the instant action was filed. *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed"). Here, at the time the instant action was filed, the undersigned had previously construed the disputed terms of one of the patents-in-suit in a terminated case, had one case pending with all four asserted patents, six additional cases with

11

two of the asserted patents, and twenty-five co-filed cases with all four of the patents-in-suit asserted. The Northern District of California had one case pending involving a related patent for which it had construed the disputed claim terms.

Given that this Court is the only court with substantive experience with some of the patents-in-suit, and currently has twenty-five pending cases involving all four asserted patents, and six cases involving two asserted patents—all assigned to the same judge—there were at least some apparent judicial economy benefits at the time of the filing that favor this action remaining in this District. While it appears the Northern District of California also had some familiarity with a related patent, this Court's substantive familiarity with the patents-in-suit weighs slightly against transfer.

## II.    The Public Interest Factors

The parties agree that the public interest factors are neutral, aside from the administrative difficulties flowing from court congestion and local interest considerations.

*(a) The Administrative Difficulties Flowing From Court Congestion*

This factor is the most speculative, and cannot alone outweigh other factors. *Genentech*, 566 F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* Netgear cites varying general civil litigation statistics and contends this factor is neutral. (Doc. No. 22, at 14–15.) Chrimar cites to this Court's prior analysis based on data it presented regarding a case pending in the Northern District of California involving one related patent with a trial date set for August 22, 2016, forty-one months after it was initiated in the Northern District of California, compared to the *Chrimar II* cases (involving all four and two

of the patents-in-suit, respectively) that are set for trial in October 2016, less than nineteen months from when those cases were initiated in this District. (Doc. No. 27, at 14.) As this Court previously stated, while generally the Court finds this factor to be speculative in nature, in this instance, the co-pendency of related patent infringement actions is instructive. Where this Court has set trial on its related patent cases in a time frame that moves the case to trial twice as fast as the related case in the Northern District of California (nineteen months compared to forty-one months), the Court finds this factor weighs slightly against transfer.

*(b) The Local Interest in Having Localized Interests Decided at Home*

Netgear contends that the Northern District of California has a local interest in this case because Netgear is headquartered there and the vast majority of party witnesses and evidence are located in California. (Doc. No. 22, at 15.) Chrimar maintains that this District has a local interest in these actions because Chrimar Holdings Company LLC is a Texas company that has been based in Longview, Texas for several years and maintains one full-time employee. (Doc. No. 27, at 14–15.) Ultimately, because Netgear has identified several individuals whose work relates to the accused technology and who are located in the Northern District of California, the Court finds that the Northern District of California has a local interest in the outcome of the litigation. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012). This District also has at least some local interest as Chrimar has an office in

13

this District and employs at least one permanent employee in this District. On balance, this factor weighs in favor of transfer because Netgear has specifically identified individuals whose work and reputation are being called into question by allegations of infringement. Such a designation weighs more heavily than Chrimar's identification of one individual largely involved in licensing and marketing activities.

*(c) The Remaining Public Interest Factors*

The remaining public interest factors are neutral. Both courts are familiar with federal patent law and there are no conflicts to avoid.

## CONCLUSION

Upon balancing the venue factors, the Court finds that the Northern District of California is a clearly more convenient forum. Here, the location of sources of proof, the convenience of willing witnesses, and the local interest weigh in favor of transfer. These three important factors, considered together, ultimately weigh heavily in favor of transfer in this case. Considerations of judicial economy and the administrative difficulties arising from court congestion weigh slightly against transfer. All other factors are neutral. The Court acknowledges that the strongest factor against transfer on the facts before it is judicial economy. In this situation, where Netgear has made a strong showing in favor of transfer on factors such as the location of sources of proof and the convenience of witnesses, the benefits of judicial economy do not outweigh Netgear's showing that the Northern District of California is clearly more convenient. Simply put, where Netgear has shown the Northern District of California is a clearly more convenient forum, the considerations of judicial economy involving this Court's prior experience with an overlapping

patent and co-pending cases do not override that showing to warrant a denial of transfer. *See In re Verizon*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("[t]o interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)"); *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) ("[t]he proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation"); *In re Apple*, 581 F. App'x 886, 889 ("judicial economy is just one relevant consideration in determining how administration of the court system would best be served in deciding a transfer motion.") Accordingly, the Court **GRANTS** Netgear's motion to transfer (Doc. No. 22).

**So ORDERED and SIGNED this 15th day of January, 2016.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE